## BAILEY v. HURLBUT et al.

(Circuit Court, D. Connecticut. November 8, 1889.)

MORTGAGES—EVIDENCE.

Defendant, who was executor of his father's estate, obtained money from a bank on the check of a third person, with which he paid mortgages on his father's land, and took an assignment thereof to himself, receiving also a quitclaim deed to the land from the mortgagee. He deposited the mortgages with the bank as security for the check. On its dishonor he obtained money from plaintiff's assignor with which to pay it, and assigned to him the mortgages, quitclaim deed, and a warranty deed to another tract, as security. The check was also sent to plaintiff's assignor, but he returned it to the original payee. *Held,* that the loan was made to defendant, and not to the drawer of the check, and the securities bound defendant and the land.

In Equity. On bill for foreclosure.

*Edwin B. Gager,* for plaintiff.

*Wm. F. Hurlbut,* for defendants.

SHIPMAN, J. This is a bill in equity for the foreclosure of mortgages upon real estate. Prior to April 11, 1881, Joseph W. Hurlbut had mortgaged his homestead in Winchester, Conn., to the Winsted Savings Bank, by two mortgages, to secure two notes for $1,000 and $500, respectively, and had died leaving a last will, by which he appointed his son William F. Hurlbut his executor, and devised one-third of said land to him, and one-third to him as trustee for Warren P. Hurlbut, and said savings bank had obtained a decree for the foreclosure of said mortgages. On said day Joseph M. Hurlbut, of Brooklyn, N. Y., another son of Joseph W., delivered to said William F. a check of Henry A. Taylor upon a bank in Rochester, N. Y., for the sum of $2,600, to the order of Joseph M., and by him indorsed, and also subsequently indorsed by said William F. The money upon said check was advanced to William F. by the Hurlbut National Bank of Winsted, and, with the exception of about $30, was paid to said savings bank for an assignment of said mortgages, and in payment of a mortgage of about $500 upon another piece of land which had been executed by William F. individually. The savings bank quitclaimed their interest in said mortgaged homestead to William F. The two mortgage notes and deeds of said premises were delivered to said national bank to be held in escrow for the time, and to become, if need be, security for the payment of said check. It was unpaid, and earnest demand was immediately made upon William F. for payment. Joseph M. induced Henry F. Shoemaker to undertake to loan to William F. the money to take up the check. Shoemaker sent his lawyer, Theodore B. Gates, to Winsted to make said loan, if the security seemed sufficient. William F. wanted that Taylor should be Shoemaker's debtor, and that the securities should be assigned to Shoemaker, as security for the payment of Taylor's debt. Gates thereupon returned to New York, but Shoemaker refused to accept Taylor as his debtor, and Joseph M. ineffectually attempted to induce Taylor to agree to indemnify William F. Thereupon, on April 26, 1881, Gates sent to William F. a certified check for $2,607.25, the amount of

Taylor's protested check, and interest and expenses thereon, which William delivered to said Hurlbut Bank, received the deeds of said mortgaged property, executed an absolute quitclaim deed of said homestead to said Shoemaker, and also an absolute warranty deed of another piece of real estate, as described in the bill of complaint, and sent to Gates the two mortgages on the homestead, with the two notes and the warranty and quitclaim deeds and the Taylor check. Gates subsequently returned the check to Joseph M. The two mortgages, notes, and quitclaim deed were security for the payment of the Shoemaker loan, and the warranty deed was intended to be additional security for the same debt, if such security was needed. It was accepted by Shoemaker as such security, and was thereafter recorded. Neither interest nor principal has ever been paid upon said loan of $2,607.25, but the whole is now due. Said Shoemaker subsequently assigned, for value, all said debt and all said security to the plaintiff, who, or his assignor, has paid taxes to the amount of $127.43, as alleged in the bill of complaint, upon said mortgaged pieces of real estate.

It is claimed by the plaintiff that the fees and expenses of said Gates, amounting to $120, were to become a part of said loan, were to be included in said security, and were to be repaid by William F. The negotiations with Shoemaker for said loan were conducted by Joseph M., who was anxious to preserve the homestead, and prevent its being lost to the Hurlbut family, and I have no doubt that he promised repayment of the $120; but it is not proved that William knew of or ratified this promise, or made himself responsible for the repayment. The only question in dispute in the case is whether the loan of $2,607.25 was made to William F. or to Taylor, and whether the deeds and securities which were given by William were security for the payment of Taylor's or his own debt. The history of the transaction, and, especially, the testimony of Gen. Gates, leave no doubt in my mind that the theory of the plaintiff is the correct one. Let a decree be entered for the payment by said William F. to the plaintiff of $2,607.25, the interest thereon, said taxes, and the costs of this suit, within such reasonable time as shall be designated, and, in default of such payment, for a foreclosure in accordance with the prayer in the fourth count of the complaint.